IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM GROVE, SR; ROMUALDO A. PALMIERI; MICHAEL G. FUHRMAN; WILLIAM WINTER; FLOYD MITZEL; HAROLD G. LUCKENBAUGH; EDWARD MYERS; MAURICE KEFAUVER, III; and PRESTON HIMES, <br><br> **Plaintiffs** <br><br> v. <br><br> JOHNSON CONTROLS, INC.; JOHNSON CONTROLS, INC. UNION RETIREE WELFARE PLAN (PLAN 570); JOHNSON CONTROLS, INC. UNION WELFARE PLAN (PLAN 565); and DOES 1 through 20, <br><br> **Defendants** | CIVIL NO. 1:12-CV-02622 <br><br><br> Judge Sylvia H. Rambo |

# **M E M O R A N D U M**

Plaintiffs brought this action alleging violations of their rights to retiree health benefits, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) and (a)(3), and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Presently before the court is Defendants' motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 31.) For the following reasons, the motion will be granted in part and denied in part.

## **I.     Background**

The central issue the court must decide in this case is whether Plaintiffs, retirees of Borg-Warner Air Conditioning, Inc. ("Borg-Warner"), presently Johnson

Controls, Inc., are entitled to retiree benefits pursuant to the terms of labor agreements that were created through collective bargaining between their employer and their union. As required when deciding a motion to dismiss, the court will accept as true all well-pleaded factual allegations contained in Plaintiffs' amended complaint. With that in mind, the court finds that Plaintiffs have pleaded the following facts.

### A. Facts

Defendant, Johnson Controls, Inc. ("Johnson Controls"), is a Wisconsin corporation that is engaged in the business of manufacturing products and offering services related to energy and operational efficiencies of buildings, automotive batteries, electronics, and interior systems for automobiles. (Doc. 27, Am. Compl., ¶ 8.) Johnson Controls has operated a manufacturing plant in York, Pennsylvania ("York plant") since 2005, when it purchased the plant from York International Corporation. (*Id.*) Prior to its operation by York International, the York plant was owned by Borg-Warner. (*Id.*) Defendants Johnson Controls, Inc. Union Retiree Welfare Plan (Plan 570) and Johnson Controls, Inc. Union Welfare Plan (Plan 565) (collectively, the "Plan") are employee benefit plans within the meaning of ERISA. (*Id.* ¶ 9.)

Plaintiffs are all retirees who worked for the predecessors of Johnson Controls at the York plant. Plaintiffs retired at various times between 1997 and 2003. (*Id.* ¶¶ 11-19.)

During their years of employment at the York plant, Plaintiffs were entitled to insurance benefits governed by successive collectively bargained agreements ("CBAs"). (*Id.* ¶ 20.) In negotiating those agreements, Plaintiffs were

represented by the International Union United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and its Local Union No. 1872 (collectively, the "Union"). (*Id*. ¶ 2.) The relevant agreements are those that were in effect from 1996-2000, 2000-2003, and 2003-2006. Each of these agreements referenced, and was subject to, a "Group Benefits Program for Retired Employees" ("GBP") booklet, which described the health benefits for retirees and their spouses. (*Id*. ¶ 21.) The GBP in effect from July 1, 1996 to June 30, 2000 ("1996 GBP") governs the insurance benefits for Plaintiffs Grove, Winter, and Kefauver, who retired between those dates. (*Id*.) The GBP in effect from July 1, 2000 to June 30, 2003 ("2000 GBP") governs the insurance benefits for Plaintiffs Palieri, Winter, Mitzel, Luckenbaugh, Myers, Kefauver, and Himes, who retired between those dates.[1] (*Id*.) The GBP in effect from July 1, 2003 to July 30, 2006 ("2003 GBP") governs the insurance benefits of Plaintiff Fuhrman, who retired between those dates. (*Id*.)

One portion of the 1996, 2000, and 2003 GBPs relevant to this dispute is Section 1.15, which is titled "Termination of Coverage." That section specifies how and when coverage would be terminated for retirees, and states as follows:

> Your health coverage is continued *until your death* – unless you request termination of coverage or you do not make the required contribution for this Plan.

(*Id*. ¶ 23 (emphasis added by Plaintiff) (citing 1996 GBP, 2000 GBP, and 2003 GBP, ¶ 1.15).) Further, in Section 1.16, each GBP addresses circumstances

---

[1] The court notes that the amended complaint alleges that the insurance benefits of Plaintiffs Kefauver and Winter are governed by both the 1996 and 2000 GBPs. (Doc. 27, ¶ 21.) The court believes that this is most likely a typographical error that will not affect the court's resolution of the instant motion in any material way.

3

concerning the continuation of health care benefits for the retiree's surviving spouse and children, and provides as follows:

> If you die after retirement, health coverage may be continued for your spouse and children, provided the required contributions are paid. To qualify for continued coverage, your spouse must have been married to you for at least one year at the time of your death.
>
> Your spouse will remain eligible until the earlier of *death or remarriage*. Your children will remain eligible until your spouse is no longer eligible, or the children are no long eligible (due to age, marriage, etc.), whichever is earlier.

(*Id.* (emphasis added by Plaintiff) (citing 1996 GBP, 2000 GBP, and 2003 GBP, ¶ 1.16).) Where the retiree retired prior to February 1, 2004, and was 65 or older, no contributions were required. (*Id.* (citing 1996 GBP, 2000 GBP, and 2003 GBP, ¶ 1.4).) Additionally, none of the GBPs included an annual maximum of benefits that the Company would cover for the participant. (*Id.* ¶ 24 (citing 1996 GBP, 2000 GBP, and 2003 GBP, ¶ 2.0) (stating "overall lifetime maximum" as "none").) The GBPs further provide that "[t]here is no overall limit on how much the Plan will pay for one person's medical bills." (*Id.* (citing 1996 GBP, 2000 GBP, and 2003 GBP, ¶ 2.1).) The GBPs, however, did provide for certain lifetime limits related to "covered charges relating to mental or nervous conditions, psychiatric disorders, alcoholism and drug addiction" and "few other conditions and services such as private-duty nursing and chiropractic care." (*Id.*)

The basis for this action arose when Johnson Controls unilaterally reduced Plaintiffs' retiree health benefits by instituting a $50,000.00 cap on benefits incurred by each participant after age 65. (*Id.* ¶¶ 3, 25.) Since the beginning of 2012, Plaintiffs have been informed that they and/or their spouses have reached the

4

$50,000 lifetime coverage limit, and Johnson Controls has refused to provide Plaintiffs with retiree health benefits. (*Id*. ¶¶ 3, 28.)

Plaintiffs' amended complaint brings the following counts: (1) Count I - Violation of Labor Agreements Actionable Under Section 301 of the LMRA against all Defendants; (2) Count II - Violation of Employee Welfare Benefit Plan Actionable under ERISA § 502 against all Defendants; (3) Count III - Breach of Fiduciary Duty under ERISA §§ 404 and 502 against Defendant Johnson Controls; and (4) Count IV - Equitable Estoppel under ERISA and LMRA § 301 against all Defendants.[2] (*Id*. ¶¶ 29-49.) Plaintiffs request declarative, equitable and injunctive relief as well as an award of attorneys' fees. (*Id*., Prayer for Relief, ¶¶ A-H.)

### B. Procedural Background

Plaintiffs commenced this action by filing a complaint on December 31, 2012. (Doc. 1.) On February 12, 2013, Johnson Controls filed a motion to dismiss followed by a brief in support on February 28, 2013. (Docs. 15 & 18.) Pursuant to a joint motion for a modified briefing schedule (Doc. 23), which this court approved on March 13, 2013 (Doc. 24), Plaintiffs filed an amended complaint on March 21, 2013 (Doc. 27). On April 19, 2013, Defendants filed an amended motion to dismiss and brief in support. (Docs. 31 & 32.) On May 10, 2013, Plaintiffs filed a brief in opposition to the motion to dismiss. (Doc. 36.) A reply brief was filed on May 24, 2013. (Doc. 39.) Thus, the motion is ripe for disposition. For the reasons that follow, the motion will be granted in part and denied in part.

---

[2] Plaintiffs bring both Counts III and IV as alternative claims to Counts I and II. (*Id.* ¶¶ 37, 44.)

## II. <u>Legal Standard</u>

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210, 211 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.*, 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a) (alterations in original).) In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a

motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

**III.     Discussion**

Defendants assert the following arguments for dismissal of Plaintiffs' amended complaint: (1) Plaintiffs' claim for retirement benefits under ERISA fails because those benefits are not vested, and reservation of rights ("ROR") language in the plan documents precludes any possibility of unlimited lifetime benefits; (2) Plaintiffs' LMRA claim fails because there was no vesting of benefits; (3) Plaintiffs' breach of fiduciary duty claim fails because the complaint contains only conclusory allegations; and (4) Plaintiffs' equitable estoppel claim fails because Plaintiffs have not alleged any "material misrepresentation" or the presence of "extraordinary circumstances." Because the LMRA argument is dependent on the court's analysis of whether the retirement benefits are vested, the court will first resolve Defendants'

arguments as to Plaintiffs' ERISA claim before turning to Defendants' other arguments.

    A.    **ERISA Claim**

Defendants argue that Plaintiffs' ERISA claim for continued health benefits must fail because Plaintiffs' retiree health benefits have not "vested" under the terms and language of the plan documents. To "vest" benefits means to render them forever unalterable. *See U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 139 (3d Cir. 1999). The Third Circuit has long held that, because vesting of welfare plan benefits (*e.g.*, healthcare benefits) constitutes an extra-ERISA commitment, an employer's commitment to vest such benefits is "not be inferred lightly and must be stated [in the plan documents] in clear and express language." *Id.* The court in *Skinner* reasoned that rejection of automatic vesting of welfare plans was an intentional act of Congress, which determined that "to require the vesting of those ancillary benefits would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income." *Id.* at 138 (quoting *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1160 (3d Cir. 1990)). In other words, "Congress recognized the need for flexibility with respect to an employer's right to change medical plans." *Id.*

Because a determination that Plaintiffs' retiree health benefits are vested requires "clear and express language" of vesting in the plan documents, the court must examine the written terms of those documents. Although construction of collective bargaining agreements is generally governed by federal law, traditional rules of contract construction apply when not inconsistent with federal labor law. *Id*. Where the contract is clear and unambiguous, a court must determine its

meaning as a matter of law. *Id.* In the Third Circuit, the concept of vesting under ERISA is to be narrowly applied, and there is a general presumption against vesting. *Id.* at 138-141; *see also Smathers v. Multi-Tool, Inc.*, 298 F.3d 191, 196 (3d Cir. 2002); *but see U.A.W v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1984) (holding that a court is to presume that the parties to a collectively bargained agreement intended retiree welfare benefits to continue for life, not withstanding the expiration of the agreement.)

Defendants rely almost entirely on the Third Circuit's reasoning in *Skinner*. 188 F.3d 130. The facts of that case are similar to the facts herein. In *Skinner*, the employer stopped paying the medical and life insurance premiums for its retired employees, and also discontinued payment of half of the health insurance premiums for the retirees' spouses. Plaintiffs sued, arguing that the plain language of the applicable CBAs provided for lifetime benefits. On cross-motions for summary judgment, the district court ruled in favor of the defendants, finding that the plaintiffs failed to meet their burden of showing that the defendant intended to vest the plaintiffs' medical benefits. 15 F. Supp. 2d 773, 780 (W.D. Pa. 1998). The district court analyzed the language of several successive CBAs. The CBAs provided that life insurance coverage "shall remain" during the term of the agreement. 188 F.3d at 136. As to medical insurance, one of the CBAs stated "[t]he Company will continue to provide the Blue Cross-Blue Shield hospitalization, prescription drug insurance policy with deductible and surgical insurance for employees and retirees." 15 F. Supp. 2d at 777. The plaintiffs argued on summary judgment, and again on appeal, that pursuant to these terms, their medical and life insurance benefits were vested and should continue in retirement as lifetime

9

benefits. 188 F.3d at 139. In support, the plaintiffs argued that the phrases "will continue" and "shall remain" unambiguously evince an intent on the part of their union and their former employer to vest medical and life insurance benefits for retirees. *Id.* at 141. The district court disagreed, finding that those terms, without more, did not satisfy the plaintiffs' burden of showing the defendant's intent to vest medical benefits. 15 F. Supp. 2d at 780. The court found the absence of durational language, such as "for life" or "for a retiree's lifetime," to evidence a lack of intent by the defendant to vest the retirees' health benefits. *Id.*

The Third Circuit agreed and affirmed the district court's granting of summary judgment for the defendant. The court reasoned that:

> A plain reading of the phrases, "will continue" and "shall remain" certainly does not *unambiguously* indicate that the benefits will continue *ad infinitum*, as argued by appellants. It cannot be said that the phrases clearly and expressly indicate vesting since there is simply no durational language to qualify these phrases. That is, the CBAs do not state that retiree benefits "will continue for the life of the retiree," or that they "shall remain unalterable for the life of the retiree."

188 F.3d at 141 (emphasis in original). Here, Defendants argue that the language in the GBPs similarly lacks "clear and express language" confirming that the health benefits are intended to be vested benefits, and, in the absence of vested benefits, Plaintiffs' ERISA claim must be dismissed. The court disagrees.

One critical difference distinguishes this case from *Skinner*: the presence of durational language. The GBPs in this case provide that the retiree's health coverage "is continued *until your death*." (Doc. 27 ¶ 23 (citing 1996 GBP, 2000 GBP, and 2003 GBP, ¶ 1.15).) Regarding the spouses of retirees, the GBPs provide that the spouse "will remain eligible *until the earlier of death or*

*remarriage.*" (*Id.* (citing 1996 GBP, 2000 GBP, and 2003 GBP, ¶ 1.16).) In *Skinner*, the court found the absence of language like "will continue for the life of the retiree," or "shall remain unalterable for the life of the retiree" to be fatal to the plaintiffs' argument that their medical benefits were vested. That proposed language, however, could be considered the functional equivalent of "until . . . death." *But see Int'l Chem. Workers v. PPG Indus., Inc.*, 236 F. App'x 789, 793 (3d Cir. 2007) (reciting the durational language in *Skinner* and finding that "[a]lthough some of the terms provide that coverage will be provided to the surviving spouse of a retiree *until the spouse remarries or dies*, this is not the durational language that qualifies these terms"). Moreover, other contractual terms, including the provision indicating no overall limit on how much the Plan will pay for an individual's medical bills could lend support to the argument that Plaintiffs' retirement benefits are vested. Accordingly, the court rejects Defendants' argument that this case must be dismissed because there is no "clear and express" language of vesting. In doing so, the court makes no determination as to whether or not Plaintiffs' retirement benefits are in fact vested, but merely finds that Plaintiffs have made a sufficient showing in their amended complaint to survive Defendants' motion to dismiss.

Defendants' second argument for dismissal of Plaintiffs' ERISA claim is that the plan documents contain a ROR clause, which they argue is a clear indication that vesting was not intended. Specifically, Defendants point to Section 1.17 (the "Plan Termination clause") of the GBPs, which provides:

> **1.17 Plan Termination**
> In the event this group plan is terminated, coverage for you and your dependents will end immediately.

11

(Docs. 27-1 ¶ 1.17; 27-2 ¶ 1.17; 27-3 ¶ 1.17.) Defendants contend that this language qualifies as ROR language because it confirms that the plan may be terminated, which is "a reality entirely incompatible with the notion of vesting." (Doc. 32, p. 19 of 34.) In support, Defendants cite *UFCW v. Campbell Soup Co.*, which held that "even unambiguous assurances that all retirees would have health insurance benefits do not create vested benefits in the presence of a reservation of rights clause." 898 F. Supp. 1118, 1134 (D. N.J. 1995) (internal quotations and citations omitted). In that case, the ROR clause stated: "Although it is hoped that their employee benefit plans will be permanent, the Company necessarily reserves the right to change, modify or discontinue them at any time without notice." *Id.* at 1123. Additional ROR language appeared in another plan document and stated that "the Company reserves the right to terminate or partially terminate this Plan or the accompanying Trust Agreement, or both, at any time . . . ." *Id.* at 1125.

Critically, the parties in *Campbell* concurred that the plan documents contained an explicit ROR clause. *Id.* No similar concurrence has been reached here. Moreover, the clause at issue here is much weaker than the explicit ROR clauses at issue in *Campbell*. For instance, the Plan Termination clause does not expressly reserve any rights of the employer to amend or terminate benefits. Defendants counter with the unsubstantiated assertion that "a clause specifically contemplating termination of the plan will be construed as a ROR clause." (Doc. 32, p. 18 of 34.)

At this juncture, the court is hesitant to find that a clause that merely "contemplates" group termination is sufficient to render it a ROR clause which might effectively negate any evidence that Plaintiffs' retirement benefits are vested.

While it is true that a ROR clause need not be explicitly labeled a "reservation of rights" clause or use precise language in order to be considered a ROR clause, a general "contemplation" of termination of a group plan does not automatically render it a ROR clause. Defendants, in arguing for dismissal, rely on the following quote from *Campbell*:

> Courts have found such language to constitute a meaningful, unambiguous reservation of rights. In *Schoonejongen v. Curtiss-Wright Corp.*, the [Third] Circuit affirmed the district court's conclusion that Curtiss-Wright expressly reserved its right to amend using almost identical language: "*Your insurance under the group policy will also terminate upon discontinuance of the group policy*."

(Doc. 32, p. 19 of 32 (emphasis added) (quoting *Campbell*, 898 F. Supp. at 1134).)

At first blush, the quoted language from *Curtiss-Wright* appears to generally "contemplate" a termination of benefits and is similar to the language at issue here. However, a closer reading of *Curtiss-Wright* reveals that the district court considered not only the above-quoted phrase, but also considered a "Constitution and Trust Agreement" in the benefit plan which stated that "the Company reserve[d] the right at any time and from time to time to modify or amend, in whole or in part, any or all of the provisions of the plan." *Schoonejongen v. Curtiss-Wright Corp.*, 18 F.3d 1034, 1037, 1041 (3d Cir. 1994), *rev'd on other grounds*, 514 U.S. 73 (1995). The court also relied on the "clear and express reservation of the right to amend contained in every SPD following 1979 and in the summary of exempt retiree benefits first distributed in 1973 and revised in 1975."[3]

---

[3] The 1976-1983 Summary Plan Descriptions (SPDs) provided: "When your employment terminates, or you cease to be a member of a class eligible for insurance under any part of the plan, your insurance under that part of the plan will cease . . . . Your insurance under the group policy will also
(continued...)

13

*Id.* at 1041-42. Here, Defendants do not indicate the presence of any similar language that could be read in conjunction with the Plan Termination clause, and the courts own review of the 1996, 2000, and 2003 GBPs, which are attached to Plaintiffs' amended complaint (Docs. 27-1, 27-2, 27-3), did not reveal any such language. Accordingly, the court, for the purposes of resolving the instant motion, rejects Defendants' argument that the Plan Termination clause constitutes a ROR clause that disproves any notion of vesting.

Lastly, the court finds that dismissal at this stage would be premature. As stated, traditional rules of contract construction apply, provided those rules are not inconsistent with federal labor law. *See Skinner*, 188 F.3d at 138. As such, where ambiguities exists, the court must look beyond the terms of the plan document to determine the parties' intent. As stated in *Skinner*:

> To determine whether a contract is ambiguous, a court may not merely consider whether the language is clear from its point of view. Rather, a court must hear the proffer of the parties and determine if there [are] objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings. Reference must be made to the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation.

188 F.3d at 142 (internal quotations and omissions omitted.) Accordingly, to resolve any ambiguities, "the Court may look to at least three types of extrinsic evidence: intent, the reasonable understanding of the beneficiaries, and past practice." *Campbell*, 898 F. Supp. at 1135 (citing *Alexander v. Primerica Holdings,*

---

³(...continued)
terminate upon discontinuance of the group policy." *Curtiss-Wright,* 18 F.3d at 1037.
  The 1973 summary of exempt retiree benefits provided: "A retiree's coverage will terminate on the date of his or her death or on the date the class of persons of which the retiree is a member ceases to be covered by the Program." *Id.*

14

*Inc.*, 967 F.2d 90, 96 (3d Cir. 1992)). Such considerations may not be made on a motion to dismiss, and are more appropriately resolved on a motion for summary judgment or after trial. Indeed, nearly every case cited by Defendants are either at the summary judgment or trial stage, or on appeal therefrom. *See, e.g., Skinner*, 188 F.3d at 138 (granting summary judgment in favor of defendants after examining extrinsic evidence including deposition testimony and past contracts). For all these reasons, the court will deny Defendants' motion to dismiss as to Plaintiffs' ERISA claim.

### B. LMRA Claim

Defendants argue that the LMRA claim must be dismissed because that claim is predicated on a viable ERISA claim for vested benefits, which Defendants' argue are not vested. (Doc. 32, p. 23 of 34 (citing *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 577 (3d Cir. 2006)).) However, as explained above, the court is unable to conclude, at this point, that Plaintiffs' retiree benefits are not vested. For this reason, the court rejects Defendants' argument for dismissal of Plaintiffs' LMRA claim, and Defendants' motion will be denied in this regard.

### C. Breach of Fiduciary Duty Claim

To establish a breach of fiduciary duty claim in the context of retiree benefits, a plaintiff must show that:

(1) the defendant was "acting in a fiduciary";

(2) the defendant made "affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries";

(3) the misrepresentation or inadequate disclosure was material; and

> (4) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure.

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig. ("Uniysys 2009")*, 579 F.3d 220, 228 (3d Cir. 2009). Defendants argue that Plaintiffs failed to allege that Johnson Controls owed any fiduciary duty to Plaintiffs, because "[m]erely changing or amending a plan is a plan sponsor function, which does not implicate any fiduciary duty." (Doc. 32, p. 24 of 34 (citing *Lettrich v. J.C. Penny Co.*, 90 F. App'x 604, 614 (3d Cir. 2004).) Defendants are correct that "[t]he amendment of an ERISA plan is not a fiduciary act governed by ERISA." *Leuthner v. Blue Cross & Blue Shield*, 454 F.3d 120, 127 (3d Cir. 2006). However, "ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *Unisys 2009*, 579 F.3d at 228 (emphasis in original) (citing *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 262 (1993)). "A person is a fiduciary with respect to a plan only to the extent that he has any discretionary authority or discretionary responsibility in the administration of such plan." *Id.* (citing *Varity Corp. v. Howe*, 516 U.S. 489, 527 (1996)).

    In their amended complaint, Plaintiffs allege that "Defendant Johnson Controls has been a fiduciary of the Plan, as it exercised discretionary authority, control or responsibility for administration or management of the Plan and management or disposition of Plan assets within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21)." (Doc. 27, ¶ 38.) Plaintiffs also allege that Johnson Controls "assumed responsibility for the contractual obligations and duties owed to the Retirees under the labor agreements and negotiated Plan terms" (*Id.*, ¶ 27), and Defendants "unilaterally imposed a $50,000 lifetime maximum for benefits paid after the participants became eligible for Medicare" (*Id.*, ¶ 25). Such factual

allegations are consistent with the allegation that Johnson Controls had discretionary authority over the administration of the plan terms. Accordingly, Plaintiffs have sufficiently pled that Johnson Controls was "acting in a fiduciary capacity."[4]

Defendants also argue that Plaintiffs failed to allege any factual allegations as to misrepresentations or material omissions or that Plaintiffs detrimentally relied on those misrepresentations or omissions. The court disagrees. In the amended complaint, Plaintiffs allege that Johnson Controls, as fiduciary of the Plan, "was obligated to discharge its duties to the Plan solely in the interests of the participants and beneficiaries."[5] (*Id.*, ¶ 39.) Plaintiffs further allege that that duty is violated "if a fiduciary fails to make a full and complete disclosure to plan participants and beneficiaries" (*Id.*), and in this instance, Johnson Controls breached its fiduciary duties when it unilaterally imposed a drastic reduction in benefits and eliminated benefits altogether for those that have exhausted the lifetime maximum amount (*Id.* ¶ 41).

The court finds these allegations sufficiently pled a misrepresentation or inadequate disclosure. The court also finds that, although the amended complaint does not specifically state that Plaintiffs detrimentally relied on the misrepresentation, the inference here is obvious: Plaintiffs, through their union,

---

[4] The court notes that fiduciary duties under ERISA attach to "particular persons" performing particular fiduciary functions. *Unisys 2009*, 579 F.3d at 228. Plaintiffs have not pled that any particular person has acted in a fiduciary capacity, naming instead only Johnson Controls. However, Plaintiffs also named as Defendants "Does 1 through 20," representing unknown individuals that Plaintiffs believe are responsible for the alleged occurrences. Discovery is the appropriate time to identify such individuals. Thus, the court does not find that Plaintiffs' failure to allege that "particular persons" were acting in a fiduciary capacity to be fatal to this claim.

[5] This language mirrors ERISA § 404, which provides, in part, that "[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . ." 29 U.S.C. § 1104(a)(1).

agree to a benefits plan that provides retiree health benefits "until . . . death." Plaintiffs, relying on this language, believed they were entitled to lifetime benefits. When those benefits were reduced or eliminated, Plaintiffs suffered harm. As stated, a complaint must plead factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Based on these allegations, the court is able to infer Plaintiffs' detrimental reliance on Defendants' alleged misrepresentation. Accordingly, Defendants' motion will be denied as to Plaintiffs' breach of fiduciary duty claim.

### D. Equitable Estoppel

In order to state a cause of action for equitable estoppel based on an entitlement to benefits under ERISA, a plaintiff must establish: (1) a material representation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances. *Jenkins v. Union Labor Life Ins. Co.*, 900 F. Supp. 2d 534, 549 (E.D. Pa. 2012). Defendants argue that Plaintiffs have failed to allege any facts establishing "extraordinary circumstances." The court agrees.

The requirement of demonstrating extraordinary circumstances is a "heightened requirement" that obligates a plaintiff to "do more than merely make out the 'ordinary elements' of equitable estoppel." *Id.* (citing *Kurtz v. Phila. Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996)). Although "extraordinary circumstances" have not been specifically defined, they generally involve "acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud." *Burstein v. Ret. Account Plan for Emp. of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 383 (3d Cir. 2003). The Third Circuit has required a showing of affirmative acts of fraud or similarly inequitable conduct by

18

an employer to satisfy this element. *See Kurz*, 96 F.3d at 1553. Here, no such allegations have been made. Plaintiffs' only allegation in this regard states: "Extraordinary circumstances exist, given the conduct of Johnson Controls or its predecessors which gave rise to Plaintiffs' reasonable beliefs." (Doc. 27, ¶ 47.) This allegation does not satisfy the heightened pleading requirement necessary to show extraordinary circumstances. Accordingly, Plaintiffs' equitable estoppel claim will be dismissed.[6]

### IV. Conclusion

For the reasons set forth herein, the court will grant Defendants' motion to dismiss as to Plaintiffs' equitable estoppel claim. The motion will otherwise be denied. An appropriate order shall issue.

S/SYLVIA H. RAMBO
United States District Judge

Dated: June 17, 2013.

---

[6] Plaintiffs have twice failed to allege equitable estoppel. Prior to the filing of the amended complaint, Plaintiffs had the benefit of reviewing Defendants' initial motion to dismiss, which raised arguments for the dismissal of the equitable estoppel claim that are substantially similar to the arguments raised in the present motion. Because Plaintiffs were put on notice, but failed to resolve the deficiencies in its first complaint, the court will dismiss this claim with prejudice. *See Cal Pub. Emps.' Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 165 (3d Cir. 2004).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM GROVE, SR; ROMUALDO A. PALMIERI; MICHAEL G. FUHRMAN; WILLIAM WINTER; FLOYD MITZEL; HAROLD G. LUCKENBAUGH; EDWARD MYERS; MAURICE KEFAUVER, III; and PRESTON HIMES, <br><br> Plaintiffs <br><br> v. <br><br> JOHNSON CONTROLS, INC.; JOHNSON CONTROLS, INC. UNION RETIREE WELFARE PLAN (PLAN 570); JOHNSON CONTROLS, INC. UNION WELFARE PLAN (PLAN 565); and DOES 1 through 20, <br><br> Defendants | CIVIL NO. 1:12-CV-02622 <br><br><br> Judge Sylvia H. Rambo |

# O R D E R

In accordance with the accompanying memorandum, it is **HEREBY ORDERED** as follows:

1. Defendants' motion to dismiss the amended complaint (Doc. 31) is **GRANTED** as to Plaintiffs' equitable estoppel claim (Count IV);

2. Defendants' motion is otherwise **DENIED**.

S/SYLVIA H. RAMBO
United States District Judge

Dated: June 17, 2013.